UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------- X

PSEG LONG ISLAND LLC, and the LONG
ISLAND LIGHTING COMPANY d/b/a LIPA,

                              *Plaintiffs*,

                -against-

TOWN OF NORTH HEMPSTEAD, N.Y.; JUDI
BOSWORTH, in her official capacity as Town
Supervisor for the Town of North Hempstead,
N.Y.; and THOMAS P. TIERNAN, in his official
capacity as Superintendent of Highways for the
Town of North Hempstead, N.Y.,

                              *Defendants*.

------------------------------------- X

**AFFIDAVIT OF
ANDREW MCCABE**

Case No. 15-cv-0222 (ADS/ARL)

STATE OF NEW YORK   )
                               ) ss.:
COUNTY OF NASSAU    )

        **ANDREW MCCABE**, being duly sworn, deposes and says:

        1.       I am an Assistant Litigation Counsel at Long Island Electric Utility Servco LLC, a subsidiary of PSEG Long Island LLC (hereinafter collectively and individually "PSEG Long Island"), a position I have held since January 1, 2014. Prior to working at PSEG Long Island, I held a similar position at the Long Island Power Authority for twelve years. Based on my current and prior positions, I have gained an understanding of the legal responsibilities of both PSEG Long Island and the Long Island Lighting Company d/b/a LIPA ("LIPA"), as well as the agreements entered into between the two entities. Additionally, in my current capacity, I am responsible for supervising all litigations involving PSEG Long Island and thus am familiar with all existing litigations.

2. I provide this affidavit in support of Plaintiffs' Motion for Summary Judgment filed in this action for the purpose of providing an explanation of (i) both LIPA's and PSEG-Long Island's legal responsibilities as related to the electric Transmission and Distribution ("T&D") System located in LIPA's service area, including within the Town of North Hempstead (the "Town"), and (ii) the legal background related to a report issued by Peter Dermody and referenced in some of the proceedings leading up to passage of the Town ordinance at issue in this case – Chapter 64B.

A. Responsibilities Associated with T&D System within LIPA's Service Territory

3. LIPA owns the electric T&D infrastructure within its service area, which includes most of Long Island and the Rockaways in Queens. The decisions in *City of New York v. LIPA*, 14 A.D.3d 642 (2d Dep't 2005) and *Suffolk County v. Long Island Power Authority*, 177 Misc.2d 208, 212-216 (N.Y. Sup. Ct. Suffolk Co. 1998) explain the transaction that resulted in LIPA's acquisition of these assets, as well as LIPA's responsibilities for the ultimate consumers of electricity within its service area.

4. I have reviewed many of franchise agreements entered into by LIPA's predecessors, including those entered into with the Town and/or Villages located within the Town. Pursuant to these franchise agreements, LIPA is the sole electric service provider authorized to serve electric load within the Town and owns most of the utility poles that carry transmission and delivery lines within the Town. Verizon Communications, Inc. ("Verizon") also owns utility poles located within the Town. In its capacity as electric service provider, LIPA has no commercial competitors for the transmission and distribution of electricity to ratepayers in its service area, and does not commercially advertise, market, or promote this service to its ratepayers.

5. LIPA's Tariff for Electric Service provides that any attachment to a utility pole is subject to permit and written agreement, as well as a fee of $5 per pole per year, other than cable television attachments, for which the fee is $9.68 per pole per year. *See* http://www.lipower.org/pdfs/company/tariff/lipatariff.pdf, Leaf No. 106. The Tariff further provides that, "[c]onsistent with the Authority's written policy, LIPA may waive the pole attachment fee for temporary or seasonal attachments that support a patriotic, civic, or ceremonial purpose, or where the tangible value of the attachment is nominal to both parties." *Id.*

6. I am unaware of any signs that LIPA and/or PSEG Long Island has permitted to be posted on its utility poles located within the Town. This is likely because Town Code § 70-197(H) "prohibits" any "sign" from being "attached to any tree, fence or utility pole." Based apparently on this prohibition, the Town entered into a license agreement with National Grid – PSEG Long Island's predecessor – to "access wood utility poles, owned by LIPA, along roadways within the boundaries of the Town of North Hempstead solely for the purpose of advertising signs that have been stapled, nailed or otherwise affixed to said utility poles." A copy of a License Agreement, dated November 30, 2009, is annexed hereto as Exhibit A.

7. The Town contacted PSEG Long Island by email, dated January 14, 2015, to renew the License Agreement. As noted in the email, "the Town Board had authorized the execution of license agreements with Keyspan (on behalf of LIPA) and Verizon 'to allow the Town to access wood utility poles, which are owned by LIPA and Verizon respectively, along roadways within the boundaries of the Town, for the purpose of removing unauthorized advertising signs which become nailed or stapled to the poles in violation of the Code of the

Town of North Hempstead.'" A copy of the January 14, 2015 email is annexed hereto as Exhibit B.

8. PSEG Long Island, through an Amended and Restated Operations Services Agreement ("OSA") between PSEG Long Island and LIPA, dated as of December 31, 2013, is LIPA's service provider. *See* OSA, http://www.lipower.org/papers/OSA.pdf, at 8. In that capacity, PSEG Long Island operates the T&D System in LIPA's service area, including within the Town, and is responsible for installing, replacing and otherwise maintaining utility poles that are located in the Town. *Id.* at 8, 10-11.

9. Pursuant to the terms of the OSA, PSEG Long Island and its management are "the name and face of the T&D System electric utility service in the" Long Island service area. *Id.* at 21. For example, PSEG Long Island's marks are used with respect to "all signage, customer bills, vehicles, equipment, uniforms, letterhead, and on utility-related communications, advertisements, public announcements and websites" associated with the service area, and PSEG Long Island has "full authority to determine policies and procedures with respect to the use of" its marks. *Id.* at 21-22. Furthermore, PSEG Long Island is directly responsible "for media and other public communications on all utility-related matters, including communications with public officials and local municipalities and counties regarding storm preparation, management, coordination and response, customer communications, programs and complaints and related matters," and has "full authority to determine all communications policies and procedures relating to its provision of" services under the OSA. *Id.* at 22.

B. Background Related to the Dermody Report

10. On or about May 27, 2014, a complaint was filed against LIPA and PSEG Long Island in New York State Supreme Court, Suffolk County, in an action captioned *Forst v. LIPA*,

Index No. 010675/2014 (Sup. Ct, Suffolk Co.) (Tarantino, J.). The complaint in *Forst* asserts several tort-based claims related to certain characteristics of a transmission project undertaken in East Hampton, Suffolk County, including that Pentachlorophenol ("Penta") contained in utility poles installed as part of the project is causing harm to the plaintiffs.

11. The defendants in *Forst* (who are the Plaintiffs here) have moved to dismiss the Complaint, which motion is fully submitted and pending. In opposition to defendants' motion to dismiss in *Forst*, the plaintiffs submitted the affidavit of Peter Dermody, which in turn attached a report that determined that soils immediately adjacent to three recently installed utility poles in East Hampton contained Penta.

12. I understand that, on or about April 24, 2014, Hon. Judi Bosworth – the Town Supervisor – wrote to various State officials asking the New York State Department of Environmental Conservation ("DEC") to investigate whether soils near the utility poles installed as part of a similar transmission project undertaken by LIPA and PSEG Long Island in North Hempstead also contained Penta, and attached the Dermody report as a reference. To date, DEC has not taken any action against PSEG Long Island or LIPA with respect to the utility poles installed as part of the transmission project in the Town.

13. Additionally, in a letter to the Suffolk County Department of Health, dated June 6, 2014, the New York State Department of Health responded to questions regarding the Dermody report by stating the following:

> [P]eople would be unlikely to contact soil near the poles with sufficient duration and frequency to result in a significant risk for adverse health effects. To further evaluate exposure to this soil, we examined the potential for acute (short-term) health effects in a child who might sit at the base of a pole and eat some of the soil. Even at the highest pentachlorophenol soil concentration reported in the April 22, 2014 Dermody Consulting letter (250 milligrams per kilogram of soil), the exposures that might result from this kind of activity are well below exposure levels that might cause health effects.

> Regarding the health risks to people who might, for example, put their hands on the utility poles, there is ample scientific information to indicate that direct contact with pentachlorophenol can irritate the skin and eyes. Therefore, it is possible that people who have direct skin contact with a utility poles treated with pentachlorophenol-containing product could experience skin irritation. However, we would not expect frequent, routine or long duration skin contact with utility poles.

A copy of the June 6, 2014 Letter is attached hereto as Exhibit C.

_____
Andrew McCabe

Sworn to before me this
17th day of March, 2015.

_____
NOTARY PUBLIC

ALB 1845646v1

PENNIE VAKKAS
Notary Public, State of New York
No. 5009208
Qualified in Nassau County
Commission Expires March 8, 2019

6